UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br>v.<br>ROBERT ELTON BRATHWAITE,<br>Defendant. | Criminal Action No. 11-186 (JDB) |

### MEMORANDUM OPINION

For his repellent crimes, Robert Brathwaite has served ten years in prison and five on supervised release. He appears to have turned his life around in that time and asks the Court to terminate the five years of supervised release remaining on his sentence. In recognition of Brathwaite's apparent rehabilitation—and with faith that it will hold—the Court will grant the motion for early termination of supervised release.

### Background

Robert Brathwaite pleaded guilty in 2011 to sex trafficking of children, interstate transportation of a minor for purposes of prostitution, and unlawful possession of a firearm and ammunition by a felon, in violation of 18 U.S.C. §§ 1591(a), 2423(a), and 922(g)(1), respectively. See Judgment [ECF No. 70] at 1–2.

The conduct underlying these convictions was abhorrent. Throughout May 2011, Brathwaite—then thirty-seven—tutored a fourteen-year-old girl in the ways of street sex work. See Statement of Offense [ECF No. 48] ¶¶ 2–3. Brathwaite shuttled the girl around Maryland and the District of Columbia in search of "johns," provided her with phones to coordinate her activities, and took part of the profits she made from having sex with adult men. Id. ¶¶ 3–5. And, although it is not reflected in the charges, Brathwaite may also have had intercourse with the girl's thirteen-

1

year-old friend, who said that she thought "she was supposed to have sex with her 'daddy.'"  Id. ¶ 6.

Consistent with a plea agreement, this Court sentenced Brathwaite to ten years in prison followed by an equal term of supervised release, as well as a $300 special assessment.  See Plea Agreement [ECF No. 50] ¶ 4; Judgment at 3–4, 7; Gov't Sentencing Mem. [ECF No. 61] at 2.  The term of imprisonment was equal to the mandatory minimum and below the guidelines range of 151 to 188 months.  See Presentence Investigation Report [ECF No. 56] ("PSR") ¶¶ 84–85.  The supervised release term, meanwhile, was double the five-year mandatory minimum and within the guidelines range of five years to life.  Id. ¶¶ 87–89.

Brathwaite has now served his ten years of incarceration and five of his ten years of supervised release.  See Probation Mem. [ECF No. 86] at 1.  By all accounts, the intervening time has gone smoothly.  Brathwaite says he now lives a family-focused life, frequently (and with the Probation Office's approval) visiting his mother in Maryland, siblings in D.C., and cousins in New York City.  See Mot. Early Termination of Supervised Release [ECF No. 85] ("Mot.") at 3.  He appears to be excelling in his career as an information technology professional: he has taken multiple courses to improve his skills and job prospects and has received five professional certifications as a result.  Id.; see also Certificates [ECF No. 85-1].

Brathwaite's success is reflected in his near-perfect compliance with his supervised release conditions.  This is laudable considering that, in addition to the standard terms of supervised release, Brathwaite's supervised release has kept him under many other conditions, including a preapproval and monitoring requirement before he can own any internet-capable device, avoiding all direct contact with minors, regular polygraph testing as part of a sex offender treatment program, and more.  See Judgment at 5–6; Mot. at 2.  Brathwaite has also satisfied his special

2

assessment obligation, completed a sex offender treatment program, and avoided all contact with law enforcement in the five years he has been on supervised release. See Mot. at 2. His one hiccup in supervised release compliance—three unapproved trips to New York to visit family in 2020—apparently resulted from a misunderstanding about the terms of his release and has not recurred. See id. at 2–3; Probation Petition [ECF No. 82] at 2.

The Probation Office concurs in this assessment of Brathwaite's performance on supervised release. It confirms that Brathwaite "is compliant with his conditions of supervision," "maintains a stable residence and employment," "has not been arrested," has "obtained five separate certifications which have allowed him to excel at his place of employment," "completed sex offender treatment," maintained his sex offender registration, and "consistently passed his polygraph examinations." Probation Mem. at 2. And Brathwaite's probation officer praises his "very positive attitude." Mot. at 2.

In March, just shy of the halfway mark of Brathwaite's supervised release term, Brathwaite moved for the early termination of his supervised release. See id. The Court ordered the Probation Office and the government to offer their positions on Brathwaite's motion, but didn't get much in return. Probation opposed the motion in one paragraph, proposing that Brathwaite's success on supervised release does not merit early termination because of the severity of his offense conduct and because he is required to register as a sex offender. See Probation Mem. at 2. Meanwhile, the government filed nothing, and provided only a one-sentence opposition through the Probation Office. Id.

## Analysis

A motion to terminate supervised release is governed by 18 U.S.C. § 3583(e)(1). See United States v. Mathis-Gardner, 783 F.3d 1286, 1287 (D.C. Cir. 2015). The statute permits a

court to "terminate a term of supervised release and discharge the defendant . . . at any time after the expiration of one year of supervised release."  § 3583(e)(1).  A motion seeking early termination appeals to the court's discretion: the court first considers a subset of the sentencing factors listed at 18 U.S.C. § 3553(a) and then exercises its discretion to grant the motion "if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice."  § 3583(e)(1).

Supervised release is reserved for "those, and only those, who need[] it." Johnson v. United States ("Johnson II"), 529 U.S. 694, 709 (2000); see also United States v. Harris, 258 F. Supp. 3d 137, 145 (D.D.C. 2017).  This principle accords with the overarching "parsimony principle" instructing courts to impose sentences that are "not greater than necessary," Dean v. United States, 581 U.S. 62, 67 (2017) (internal quotation marks omitted), but it takes on a different flavor with regard to supervised release.  Supervised release is a rehabilitative endeavor, serving "an entirely different purpose" than incarceration.  Pepper v. United States, 562 U.S. 476, 502 n.15 (2011); see also Esteras v. United States, No. 23-7483, slip op. at 9–10 (U.S. June 20, 2025); Johnson v. United States ("Johnson I"), 529 U.S. 53, 59 (2000) ("Supervised release fulfills rehabilitative ends, distinct from those served by incarceration."); Mont v. United States, 587 U.S. 514, 523–24 (2019).  And more than the need for punishment, "a supervisee's rehabilitative needs are often fluid or evolving."  United States v. Begay, 631 F.3d 1168, 1173 (10th Cir. 2011).  So adjudicating a motion for early termination of supervised release requires sensitivity to changing circumstances and signs that a supervisee is rehabilitated—i.e., that he no longer needs supervision.  See Johnson II, 529 U.S. at 709.

Congress underscored this point by culling the § 3553(a) factors relevant to sentences of supervised release.  Whereas a court contemplating prison time must consider all the factors laid

4

out in that subsection, a court imposing—or asked to terminate—supervised release considers "only a subset" of them. United States v. Raymond, Crim. A. No. 09-183 (RMC), 2019 WL 1858285, at *1 (D.D.C. Apr. 25, 2019); see § 3583(c), (e). The relevant factors are (1) the nature and circumstances of the offense and the defendant's history and characteristics; (2) deterrence of future criminal conduct; (3) protection of the public from further crimes of the defendant; (4) the need to provide the defendant with education or vocational training, medical care, or other correctional treatment; (5) the applicable sentencing guideline range for the offense and pertinent policy statements issued by the U.S. Sentencing Commission; (6) the need to avoid unwarranted sentencing disparities; and (7) the need to provide restitution to any victims of the offense. See 18 U.S.C. § 3583(e) (instructing a court to consider the factors set forth in § 3553(a)(1), (a)(2)(B)–(D), and (a)(4)–(7)).

"Conspicuously missing from this list is § 3553(a)(2)(A), which directs a district court to consider 'the need for the sentence imposed' 'to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense.'" Esteras, slip op. at 1 & 6 n.3. The exclusion of this retribution-focused consideration was no accident. That factor, important to decisions about carceral sentences, is irrelevant to supervised release "because the primary purpose of supervised release is to facilitate the integration of offenders back into the community rather than punish them." United States v. Moore, Crim. A. No. 01-238 (BAH), 2020 WL 435296, at *2 (D.D.C. Jan. 28, 2020) (quoting U.S. Sentencing Comm'n, Federal Offenders Sentenced to Supervised Release, July 2010)). Accordingly, when contemplating supervised release, "a court must consider the forward-looking ends of sentencing (deterrence, incapacitation, and rehabilitation), but may not consider the backward-looking purpose of retribution." Esteras, slip op. at 10; see also United States v. Mauldin, Crim. A. No. 18-371 (BAH), 2020 WL 2840055, at

5

*3 (D.D.C. June 1, 2020). The remainder of this opinion will look forward, then, and ask whether Brathwaite, having successfully completed more than five years of supervised release, needs supervision for nearly five more.

### I. Section 3553(a) factors

The first factor—the nature and circumstances of the offense and the defendant's history and characteristics—weighs against Brathwaite. His was a grave, repellent offense. And it was not the product of a moment's misjudgment but rather an ongoing decision to abuse a young girl's trust, all so that he could benefit financially.

At the same time, though, the Court must be careful to account for this factor only insofar as it is relevant to "deterrence, incapacitation, and rehabilitation," resisting any instinct towards retribution. See Esteras, slip op. at 14; id. at 17 ("[d]istrict courts may not consider" retribution in supervised-release context). The Court does believe the severity of Brathwaite's offense is relevant to these permissible factors; a particularly abhorrent offense like this one "might inform the court's judgment as to whether" further supervised release is necessary "to protect the public from further crimes of the defendant." Id. at 14 (quoting 18 U.S.C. § 3553(a)(2)(C)). But Brathwaite has shown no tendency to repeat the charged conduct, as his "history" shows. Indeed, he has no arrests or convictions for any conduct remotely similar to the conduct here, either before or after this conviction. See PSR at 10–13. Furthermore, Brathwaite's "characteristics" include his characteristics today: his "very positive attitude," family ties, see Mot. at 2–3, commitment to excelling in his career, see Probation Mem. at 2, and the like.

In sum, the Court considers the first factor to weigh against termination, but not overwhelmingly. Cf. Mauldin, 2020 WL 2840055, at *3 (concluding that this factor "weigh[ed] against early termination, but not heavily," where the offense was one of child pornography but

6

the defendant "felt remorseful" (cleaned up)); Raymond, 2019 WL 1858285, at *2 (similar where the offense involved child pornography and "plans to engage in sexual conduct with [a] 4-year-old").

The second and third factors focus on the need to deter criminal conduct and protect the public. These important considerations do not support Brathwaite's continued supervision. Brathwaite's already lengthy sentences of incarceration and supervised release "amply provide[] a general deterrent to others." Moore, 2020 WL 435296, at *4; see also United States v. Kaplan, Crim. A. No. 14-226 (BAH), 2021 WL 4521041, at *3 (D.D.C. Oct. 4, 2021). And, most importantly, Brathwaite's five years of near-perfect compliance with onerous (though warranted) release conditions and commendable dedication to furthering his career—a manifestation of his rehabilitation that goes above and beyond compliance with release conditions—are "highly probative" of the lack of a threat he poses to the public. Id. at *3 & n.2; see also Raymond, 2019 WL 1858285, at *2 (reaching the same conclusion where the defendant complied with supervised release conditions including polygraph testing, drug testing, electronic monitoring, and sex offender registration, and also registered in a paralegal training course "to help him re-integrate more fully into society"); cf. Mont, 587 U.S. at 526 (listing counseling and job training as steps "intended to reacclimate [a supervisee] to society").

The fourth factor asks whether continuing supervision will grant the supervisee needed training or correctional treatment. The Probation Office points to no such opportunities it can provide Brathwaite, and he has already completed a sex offender treatment program. Meanwhile, Brathwaite appears able to further his career training without Probation's assistance. See Raymond, 2019 WL 1858285, at *2. Where there is "no continuing need for supervision for the

7

purpose of rehabilitation," this factor "weighs in favor of early termination." Harris, 258 F. Supp. 3d at 148.

The fifth factor instructs the Court to consider the applicable sentencing guidelines range and pertinent policy statements issued by the Sentencing Commission. Brathwaite's ten-year supervised release term was double the five-year mandatory minimum, which also anchored the bottom end of the guidelines range. See PSR ¶¶ 87–89. He has now served five years of supervised release, meaning that terminating his supervised release term would still place him within the guidelines range.

Two policy statements are pertinent; one disfavors Brathwaite and one favors him. On the one hand, "the U.S. Sentencing Guidelines policy statements reflect a policy of limiting leniency for sex offense cases." United States v. Scanlon, Crim. A. No. 14-7 (RC), 2024 WL 1716645, at *3 (D.D.C. Apr. 22, 2024). The guidelines recommend the statutory maximum term of supervised release—here life—for sex offenses. See U.S.S.G. § 5D1.2. On the other hand, the Commission generally promotes agility in responding to supervisees' efforts to better themselves and thereby reduce the danger to the public. For example, the Commission "encourage[s]" courts "to consider early termination of supervised release if the defendant is an abuser of narcotics . . . who, while on supervised release, successfully completes a treatment program, thereby reducing the risk to the public from further crimes of the defendant." Id. cmt. n.5. That hypothetical parallels Brathwaite's successful completion of a sex offender treatment program. And it is more directly relevant to the early-termination context, whereas the policy recommending long terms of supervised release for sex offenders speaks to the initial sentencing context, where courts have less information about how a defendant will fare outside of prison. Cf. United States v. Wesley, 311 F. Supp. 3d 77, 80 (D.D.C. 2018) (concluding that the "pertinent policy statements" factor is "no[t] relevan[t]"

8

because the Commission "has not promulgated any guidelines or policy statements addressing early terminations of supervised release." (internal quotation marks omitted)).  In light of the competing policy statements, the Court concludes that this factor is neutral.

Finally, courts have concluded that the sixth factor, avoiding unwarranted sentencing disparities, is of "limited utility" in the early-termination context, Harris, 258 F. Supp. 3d at 145, because keeping rehabilitated supervisees "on supervised release simply because other offenders" remain on it "would undermine the case specific inquiry required in evaluating a motion for early termination of supervised release," Raymond, 2019 WL 1858285, at *3 (internal quotation marks omitted); see also, e.g., United States v. King, Crim. A. No. 03-249 (BAH), 2019 WL 415818, at *2 (D.D.C. Feb. 1, 2019); Wesley, 311 F. Supp. 3d at 80.  In any event, "[i]n similar cases, . . . other courts in this district" have terminated ten-year supervised release terms after five years in recognition of rehabilitative efforts.  See United States v. Carter, Crim. A. No. 00-252 (RCL), 2023 WL 6199185, at *4 (D.D.C. Sept. 22, 2023) (collecting cases).  And Brathwaite had no restitution obligations, so the final factor is irrelevant—although it is worth noting that he has satisfied his $300 special assessment.  See Mot. at 2.

## II.     Conduct of the defendant and interest of justice

After considering the above factors, the Court may grant early termination only if satisfied that such a step is "warranted by the conduct of the defendant released and the interest of justice." 18 U.S.C. § 3583(e)(1).  The Court is so satisfied.

An initial note about the standard.  Some courts in this district have drawn inspiration from the Second Circuit's decision in United States v. Lussier, 104 F.3d 32 (2d Cir. 1997), to conclude that early termination is warranted only in circumstances "of an unusual or extraordinary nature." See, e.g., United States v. Longerbeam, 199 F. Supp. 3d 1, 2 (D.D.C. 2016); United States v.

Etheridge, 999 F. Supp. 2d 192, 196 (D.D.C. 2013). But since that time, the Second Circuit itself has disclaimed that misreading of the statute. See United States v. Parisi, 821 F.3d 343, 345, 347–48 (2d Cir. 2016). Accordingly, the circuits agree: an "exceptional behavior" rule "is incorrect as a matter of law." United States v. Ponce, 22 F.4th 1045, 1047 (9th Cir. 2022); see also United States v. Hale, 127 F.4th 638, 640–42 (6th Cir. 2025); United States v. Melvin, 978 F.3d 49, 53 (3d Cir. 2020); accord Harris, 258 F. Supp. 3d at 148–50. Instead, the statute's "expansive phrases" grant the district court "discretion to consider a wide range of circumstances." Ponce, 22 F.4th at 1047 (internal quotation marks omitted). So rather than an atextual gloss, the statute means what it says: "the district court may terminate a term of supervised release at any time after the expiration of one year of supervised release if the court 'is satisfied that such action is warranted by the conduct of the defendant . . . and the interest of justice.'" United States v. Arrington, 763 F.3d 17, 27 (D.C. Cir. 2014) (alteration in original) (quoting 18 U.S.C. § 3583(e)(1)).

Exercising the discretion inherent in those phrases is a case-specific undertaking. And it requires the Court to strike a difficult balance. It is of course true, after all, that "compliance with all conditions is expected of an individual on supervised release, and non-compliance is a ground for revocation." Hale, 127 F.4th at 641 (cleaned up). For that reason, mere compliance "generally" is not enough to satisfy a court that early termination is warranted—even if the statute does not require more. Id.; see also United States v. Johnson, 228 F. Supp. 3d 57, 63 (D.D.C. 2017). At the same time, though, "while it might be that the Judiciary should expect former felons to follow directions, obey the law, and re-design their lives, it is all too obvious that such post-incarceration success is not achieved by many who make the attempt." Raymond, 2019 WL 1858285, at *3. So Brathwaite's compliance "with each term of his supervised release for over five years is, actually,

10

fairly extraordinary." Id.  In any event, Brathwaite exhibits not only compliance with supervision terms but also dedication to excelling in his career and close family ties.

Against Brathwaite's model behavior, the Probation Office raises only the severity of Brathwaite's offense conduct and his "requirement to register as a sex offender."  See Probation Mem. at 2.  The Court does not comprehend the relevance of the latter; Brathwaite's registration obligation comes by way of statute, not supervised-release condition, and will not expire with the termination of his supervision.  See 34 U.S.C. §§ 20913(a), 20915(a);[1] see also Judgment at 4 (not imposing registration with state sex offender registry as a separate condition of supervised release).  If anything, Brathwaite's obligation to register as a sex offender lends additional comfort that he will not escape the notice of authorities if he relapses into the repulsive behavior that led him to prison.

As for the severity of the offense conduct, Probation in essence takes the position "that no matter the extent of the defendant's rehabilitation, his egregious criminal conduct" precludes a reduction in his supervised release term.  Harris, 258 F. Supp. 3d at 150.  But given the forward-looking nature of supervised release, his conduct is less relevant (though not irrelevant) to this analysis.  See Esteras, slip op. at 10, 13–14; Moore, 2020 WL 435296, at *3.  Accounting for the full range of considerations and for the reasons articulated above, the Court is satisfied that Brathwaite no longer "need[s]" supervision.  See Johnson II, 529 U.S. at 709.

"At some point, once justice has been served, the system must take care to avoid erecting roadblocks that might prevent an offender from reintegrating into society and becoming a productive and useful citizen again."  United States v. Cunningham, Crim. A. No. 05-2137 (LAB),

---

[1] Given his convictions, Brathwaite is at least a Tier II, and potentially a Tier III, sex offender.  See § 20911(3)(A)(i), (iii).  That commits him to a minimum of twenty-five years of registration.  See § 20915(a)(2), (b); United States v. Nazerzadeh, 73 F.4th 341, 343, 348 (5th Cir. 2023).  This is to say nothing of any registration obligation he may have under District of Columbia law.  See D.C. Code § 22-4001(8)(G).

11

2014 WL 3002207, at *2 (S.D. Cal. July 1, 2014). Justice has been served—all that is left on Brathwaite's sentence is supervised release, which, unlike his carceral sentence, does not aim to dish out "just deserts," <u>Esteras</u>, slip op. at 9—and supervised release now stands as more of a roadblock than a tool facilitating "a transition to community life," see <u>Mont</u>, 587 U.S. at 523 (internal quotation marks omitted). Accordingly, the Court will grant Brathwaite's motion for early termination of his supervised release.

## Conclusion

For the above reasons, the Court will grant Brathwaite's motion for early termination of supervised release, effective July 1, 2025. A separate order shall issue.

<u>        /s/        </u>
JOHN D. BATES
United States District Judge

Dated: <u>June 26, 2025</u>